J-S42029-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ADOPTION OF C.W.S. AND R.L.S., III | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.E.M. | No. 240 WDA 2014 |

Appeal from the Decrees entered December 30, 2013,
in the Court of Common Pleas of Warren County Orphans'
Court at No(s): AN 6 of 2013

BEFORE:    PANELLA, JENKINS, and MUSMANNO, JJ.

MEMORANDUM BY JENKINS, J.:                **FILED NOVEMBER 19, 2014**

J.E.M. ("Mother") appeals from the decrees entered on December 30, 2013 in the Court of Common Pleas of Warren County, terminating her parental rights to C.W.S. (born in September of 2006) and R.L.S., III (born in March of 2005) (collectively "the Children"), pursuant to 23 Pa.C.S.A. § 2511.  We affirm and grant counsel's petition to withdraw.

In 2008, the parties resided in Chautauqua County in the State of New York and had joint custody of the Children.  In 2010, Father was awarded sole custody of the Children, and Mother supervised visits.  N.T., 12/30/13, at 11-12.  Prior to 2010, Mother did not attend to some of her visitations with the Children.  Father testified that he last received any type of communication from Mother in September of 2010.

On May 23, 2013, Father filed a petition for the involuntary termination of Mother's parental rights, pursuant to 23 Pa.C.S.A. § 2511(a)(1), and (b).  The trial court held a hearing on the petition on

December 30, 2013.  At the hearing, Father; Father's wife, K.S.; Paternal Grandmother; and Mother testified.  On December 30, 2013, the trial court entered its decrees, terminating Mother's parental rights to the Children.  On January 29, 2014, Mother timely filed her notice of appeal and concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

As a preliminary matter, Mother's counsel seeks to withdraw representation pursuant to **Anders v. California**, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and **Commonwealth v. Santiago**, 602 Pa. 159, 978 A.2d 349 (2009).  **Anders** principles apply to appeals involving termination of parental rights.  **See In re S.M.B.**, 856 A.2d 1235 (Pa. Super. 2004).  **Anders** and **Santiago** require counsel to: 1) petition the Court for leave to withdraw, certifying that after a thorough review of the record, counsel has concluded the issues to be raised are wholly frivolous; 2) file a brief referring to anything in the record that might arguably support the appeal; and 3) furnish a copy of the brief to the appellant and advise him or her of the right to obtain new counsel or file a *pro se* brief to raise any additional points the appellant deems worthy of review.  **Santiago**, 602 Pa. at 173-79, 978 A.2d at 358-61; **In re Adoption of V.G.**, 751 A.2d 1174, 1176 (Pa. Super. 2000).  Substantial compliance with these requirements is sufficient.  **Commonwealth v. Wrecks**, 934 A.2d 1287, 1290 (Pa. Super. 2007).  "After establishing that the antecedent

- 2 -

requirements have been met, this Court must then make an independent evaluation of the record to determine whether the appeal is, in fact, wholly frivolous." **Commonwealth v. Palm**, 903 A.2d 1244, 1246 (Pa. Super. 2006) (*quoting* **Commonwealth v. Townsend**, 693 A.2d 980, 982 (Pa. Super. 1997)).

In **Santiago**, our Supreme Court addressed the briefing requirements where court-appointed counsel seeks to withdraw representation on appeal:

> Neither **Anders** nor [**Commonwealth v.**] **McClendon**[, 495 Pa. 457, 434 A.2d 1185 (1981)] requires that counsel's brief provide an argument of any sort, let alone the type of argument that counsel develops in a merits brief. To repeat, what the brief must provide under **Anders** are references to anything in the record that might arguably support the appeal.
>
> * * *
>
> Under **Anders**, the right to counsel is vindicated by counsel's examination and assessment of the record and counsel's references to anything in the record that arguably supports the appeal.

**Santiago**, 602 Pa. at 176-177, 978 A.2d at 359-360. Thus, the Court held:

> [I]n the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Id.** at 178-79, 978 A.2d at 361.

- 3 -

Instantly, counsel filed a petition to withdraw representation. The petition states that counsel conscientiously and thoroughly reviewed the record of the proceedings, and concluded that the appeal is frivolous. The petition also states that counsel informed Mother, by United States mail, of her appellate rights. Application/Petition for Leave to Withdraw Appearance, filed 5/6/14, at 2. The letter itself, attached to the petition, advises Mother of her right to raise questions about the jurisdiction of the court and to question the legality of the trial court's decision, and of her right to retain new counsel, proceed *pro se*, or to raise any additional points that she may deem worthy of consideration.

In her **Anders** brief, counsel provides reasons for her conclusion that the appeal is wholly frivolous. Mother's Brief at 3-5. Counsel also refers to items in the record that arguably support the appeal. Mother's Brief at 3-5. Additionally, counsel provides a well-written and detailed summary of the facts and procedural history of the case, with citation to the record and relevant law. Mother's Brief at 2-3. Thus, counsel has substantially complied with the requirements of **Anders** and **Santiago**.

Mother has filed neither a *pro se* brief nor a counseled brief with new privately-retained counsel. We review this appeal based on the issues raised in the **Anders** brief:

1. Whether the trial court abused its discretion in refusing to grant [Mother]'s request to continue hearing on [Father's and K.S.'s] petition to terminate Mother's parental rights?[1]

Mother's Brief at 5.

In reviewing an appeal from the termination of parental rights, we review the appeal in accordance with the following standard.

Because a trial court has broad discretion regarding whether a request for continuance should be granted, we will not disturb its decision absent an apparent abuse of that discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the results of partiality, prejudice, bias, or ill-will.

*In re J.K.*, 825 A.2d 1277, 1280 (Pa. Super. 2003) (citations omitted) (quotations omitted).

On May 23, 2013, Father filed petitions for the involuntary termination of Mother's parental rights to the Children. The trial court scheduled an evidentiary hearing on the petitions for July 18, 2013. The trial court granted Father a continuance due to his inability to serve Mother with the petitions. The trial court rescheduled the hearing for September 18, 2013.

Father filed proof of service on Mother on July 22, 2013. Prior to the September 18, 2013 hearing, Mother requested, by letter, that the trial court appoint her counsel. On September 18, 2013, the trial court appointed

---

[1] In Mother's Rule 1925(b) statement, Mother's counsel does not challenge the trial court's decrees terminating Mother's parental rights to the Children. In conducting our independent review of whether the appeal is frivolous, we will address whether the trial court erred in terminating Mother's parental rights to the Children.

- 5 -

counsel for Mother and a guardian *ad litem* for the Children. The trial court rescheduled the termination hearing for November 8, 2013.

On November 7, 2013, the day before the scheduled hearing, Mother's counsel filed a motion for continuance, and the trial court granted that motion. In the motion for continuance, counsel averred that she made several attempts to contact Mother concerning the petition to terminate her parental rights, but Mother never responded to counsel because the address was incorrect. Trial Court Opinion, 2/7/14, at 3. The trial court granted the continuance in order to facilitate contact between Mother and her attorney. *Id.* The trial court rescheduled the hearing for Monday, December 30, 2013.

On December 27, 2013, the Friday before the scheduled hearing, Mother's counsel filed another motion for continuance that indicated that counsel had "been playing 'phone tag' with [Mother] and had not made direct contact in order to be able to set up a meeting." Motion to Continue Hearing, December 27, 2013, ¶ 7. The trial court denied Mother's motion for continuance.

Prior to conducting the December 30, 2013 hearing, the trial court allowed argument on Mother's counsel's renewed continuance request. The trial court again denied the request. The trial court explained the decision to deny Mother's December continuance request(s) as follows:

> This [c]ourt concluded that granting another continuance to the Appellant, considering the facts and circumstances surrounding the request for a continuance, was inappropriate. Appellant was twice granted an extension of time; once to allow

for [c]ourt appointment of counsel, and the second time to allow Appellant more time to meet with her attorney and discuss the case, as there had been a communication error. Thus, Appellant was given, from the time of her first appearance in [c]ourt on September 18, 2013 until her Termination of Parental Rights hearing on December 30, 2013 to meet with her attorney and discuss strategy regarding the termination hearing. Appellant and her attorney failed to meet or communicate in any substantive manner for 103 days, even though both the Appellant and her attorney were aware of the impending nature of the hearing, and even though the [c]ourt made the Appellant's contact information available to Appellant's attorney both at the time of appointment and after the first continuance was granted on November 7, 2013.

In addition, Appellant requested both continuances a few working hours before the hearings were scheduled to occur. In the first instance, the Appellant requested a continuance on November 7, 2013 for a November 8, 2013 hearing. The [c]ourt granted this continuance, as previously stated, in order to facilitate contact between Appellant and her attorney. Appellant requested her second continuance, the continuance placed at issue here by Appellant[], on Friday, December 27, 2013 as the [c]ourt was nearing close of business. Hearing was scheduled on the matter Monday, December 30 at 9:00 am. In both instances, Appellant waited until the last moment to file for a continuance.

In determining whether or not to grant the Appellant's continuance, the [c]ourt considered the relevant facts and circumstances surrounding the request for a continuance presented by Appellant on December 27, 2013, as well as at the beginning of the termination hearing held December 30, 2013. The [c]ourt looked to the interests of the parties in the expediency of the proceeding, as well as how many continuances the parties had been granted prior to the December 30, 2013 request. The [c]ourt also considered the reasons stated by Appellant's counsel for requesting the continuance, as well as the best interests of the Children, RLS III and CWS. This [c]ourt determined, in consideration of the facts as presented above, to deny the request and go forward with the hearing as originally scheduled, and that denying the Appellant's request for a continuance in this matter was proper under the circumstances.

Trial Court Opinion, 2/7/14, at 4-5.

We find that the trial court did not abuse its discretion in denying Mother's motion for continuance. Mother was aware of the petition for termination of her parental rights because Father served her on July 22, 2013, and Mother responded with a request for counsel, which was granted. Furthermore, at the termination hearing, Mother testified, the Children were represented by their guardian *ad litem*, and Mother's counsel fully cross-examined Father's witnesses.

Additionally, based on our independent review, we find that the trial court's decision to terminate Mother's parental rights under section 2511(a)(1) and (b) is supported by the competent evidence in the record.[2]

Our standard of review regarding orders terminating parental rights is as follows:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, [613 Pa. 371, 455,] 36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result

---

[2] The trial court did not address its reasons for terminating Mother's parental rights in its Rule 1925(a) opinion. However, at the conclusion of the termination hearing, the trial court stated its reasons for the termination of Mother's parental rights to the Children pursuant to Section 2511(a)(1) and (b). *See* N.T., 12/30/13, at 126-130.

merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, 613 Pa. 371[, 455], 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, [575 Pa. 647, 654-655], 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, [608 Pa. at 28-30], 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, [539 Pa. 161, 165,] 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 616 Pa. 309, 325-26, 47 A.3d 817, 826-27 (2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained:

[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.* (*quoting In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

This court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, the trial court terminated Mother's parental rights under Section 2511(a)(1) and (b), which provide as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

* * *

 **(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

We have explained this Court's review of a challenge to the sufficiency of the evidence to support the involuntary termination of a parent's rights pursuant to section 2511(a)(1) as follows:

To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,

Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to [s]ection 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to [s]ection 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (internal citations omitted).

Regarding the definition of "parental duties," this Court has stated:

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

- 11 -

Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with . . . her physical and emotional needs.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied*, 582

Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

At the hearing, the trial court stated:

The testimony in this case is really uncontradicted that for a period of at least some point in September 2010, whether it is in the middle or beginning of September 2010, until the filing of the original petitions on May 31st of this year there was absolutely no contact, no communication, no performance of parental duties and that's uncontradicted by the testimony of [F]ather, [P]arental [G]randmother and [M]other that there's been no in person contact, no telephone communication, no gifts, cards, letters, necessities provided, no support paid, so clearly no parental duties have been performed during that I guess it's a two-year, eight-month period immediately preceding the filing of the termination petitions. Even prior to that, based upon Father's testimony and his summary of the scheduled day visits, those were cancelled regularly as well, so it's not as if we had a history of solid compliance with a court order or regular contact with the Children. This two-year, eight-month period was preceded by a couple of years of cancellation of visits and failure to perform even the minimal parental duties at those Wednesday and Sunday visits permitted [M]other. So the grounds themselves have been established by the petitioner now I have to look at any evidence [M]other presents that would attempt to explain or justify the failure to perform those duties

- 12 -

or what would otherwise clearly evidence a settled purpose of relinquishing a claim to the [Children]. And to do that obviously I have to judge the credibility of all the witnesses' testimony; that's [Fa]ther, [F]ather's wife, [Paternal Grandmother], and [M]other, and I have some concerns about Mother's credibility for a number of reasons. She herself indicated that since she was attacked by a pitbull she has memory problems. She's admitted ongoing persistent addiction to painkillers, she's admitted crimen falsi conviction for petty larceny and on top [of] that her explanations simply don't make any sense.

When you have telephone numbers for [F]ather and [P]aternal [G]randmother, you call them. And you know where [P]aternal [G]randmother lives when you do get a vehicle, regardless of how ashamed you may feel for your absence from the [Children's] lives, you show up. The law requires more than a superficial effort. To the extent there's conflicting testimony about text or Facebook post I'm construing that testimony in favor of [F]ather and [P]aternal [G]randmother. [P]aternal [G]randmother seemed very reasonable to me. She offered her home as a place for visits, transportation, transfers of custody to occur. She indicated she certainly wasn't happy with the abuse allegations, but indicated we didn't pursue criminal charges, and I believed her when she tearfully testified that she always hoped that [M]other would get her act together, deal with her addiction issues, and become a mother and there's simply no reason for me to think that if [M]other contacted [P]aternal [G]randmother that she would do anything other than help facilitate that. At the very least [Mother] has to try. She may be embarrassed or ashamed but she has to try. She gave testimony about losing her cell phone, but usually you recall the cell phone number. There's no indication she made any effort to track down [F]ather or his whereabouts.

If you want an example of how you do that, you drive around for six months, like [F]ather did, trying to track down [M]other. You can't make half-hearted efforts, you have to make really heroic efforts to assert your rights as a parent. She didn't go to the courthouse in New York State to see if there was a way to file something on her own. She didn't come down here to do that. She simply didn't make the type of efforts that the appellate courts require a parent to make and there's no evidence presented to me to that [F]ather or his family did anything to preclude that. Just the opposite. For six months at

a minimum, they continued to go to [P]arental [G]randmother's home to make the [Children] available. Initially breaking the [Children's] hearts on a regular basis when [M]other didn't show up and then under the guise of simply going for dinner with the paternal grandparents.

So there's no evidence presented that [F]ather precluded [M]other from asserting her rights. She had been in court before, simply she certainly knows how to file a child abuse action on her own, she should have used the same energy to file a custody action of her own. I found a lot of her excuses about transportation to be disingenuous. Need to at the very least assert the same efforts you're making to acquire painkillers to acquire information about your children or to assert your parental rights to the Children. So I didn't find any cause that precluded [M]other from asserting her parental rights throughout this two-year, eight-month period at the very least.

N.T., 12/30/13, at 126-130.

In the instant matter, the trial court found that Mother failed to fulfill her parental duties and responsibilities for two years. The testimony established that the Children are in a stable environment, and that adoption was in the best interest of the Children. We defer to a trial court's determination of credibility, absent an abuse of discretion, and discern no such abuse in its finding credible the testimony of Father and Paternal Grandmother. *See In re Adoption of S.P.*, 47 A.3d at 826-27. Therefore, we are constrained to conclude that the trial court properly terminated Mother's parental rights pursuant to section 2511(a)(1).

Lastly, we find that the trial court did not err in terminating Mother's parental rights pursuant to Section 2511(b). With respect to the bond analysis pursuant to Section 2511(b), the trial court stated

I have to give primary consideration to the developmental, physical, and emotional needs and welfare of the [Children] and, obviously, that's when I look at any bonding or assessments.

Clearly, the [Children] are in a happy, loving, stable home. Ms. Steward's been in their lives for five years, more than half their lifetimes. She's been the one to get them up in the morning, get them to school, welcome them home from school, go to doctor's appointments, go to extracurricular activities, go to school, provide their day-to-day care. No reason to believe that that care hasn't been appropriate. To the contrary, it's what the boys needed and that's been provided for them and has been for years.

They have two half-siblings, and I hate the term half-siblings because it really doesn't do justice to the type of relationship that you develop when you live your whole life with those individuals, but there are two half-brothers almost three and one years of age live in that home that identify with their brothers, with the Children as brothers. And they've developed a family unit, a happy home and clearly that's met the [Children's] developmental needs, physical needs and emotional needs.

[The Children] past that period of time when they long for [M]other, particularly R.L.S., III. Heard the heartbreaking testimony of paternal grandmother that he worshipped [M]other, and that type of worship disappeared, unfortunately, and it is heartbreaking that he had to go through that, but he went through it and he's out of that and now he's developed a new mother. [The Children] call [Father]'s wife "mom."

And there wouldn't be any reason for me to conduct any type of bonding evaluation when everyone acknowledges at this point as we sit here today for a period of three years plus, three years and three months, there's been no contact. I don't need an expert to tell me any bond that existed was long gone when the most recent half of [the Children's] lifetime they've had no contact. The testimony is clear that while initially there was emotions the only discussion about [M]other now are maybe when they come across an old photograph and they recall a memory, but they are not asking to see [M]other, they're not missing [M]other. [The Children] are doing well in school, they're doing well behaviorally and really to try and reestablish a long gone bond between the [C]hildren and [Mother] would be borderline cruel to them at this point knowing it would probably set them up for a heartbreak in the future. So there's no bond to be preserved, there's no issue I need to look at how a

- 15 -

severance of the relationship with [M]other would affect the [Children] because she severed that beginning September of 2010 and they've had to live that life without her. If [Mother] is addressing her addiction issues or mental health issues she's to be commended for that, but when you are four, five, six, seven year old boy and someone is gone it doesn't make any difference to them why that absence is occurring.

N.T., 12/30/13, at 130-133. *See In re K.Z.S.*, 946 A.2d 753, 763 (Pa. Super. 2008) (In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists). Therefore, we find that the trial court gave adequate consideration to the developmental, physical, and emotional needs of the Children in terminating Mother's parental rights pursuant to section 2511(b), and that the record supports the trial court's best interest analysis.

Our independent review of the record indicates that, in fact, Mother has no issues of arguable merit on which she can base an appeal. Accordingly, we find the record and the law support the trial court's decrees terminating Mother's parental rights, and we grant counsel's motion to withdraw from representation.

Decrees affirmed; counsel's petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/19/2014